IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ILSE BOCK, individually and as next of kin, surviving spouse, next friend and personal representative of HANS BOCK, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:08-cv-02650 |
| UT MEDICAL GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION ON DEFENDANT
UT MEDICAL GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT
AND ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND

On February 26, 2010, the Court granted Defendant UT Medical Group, Inc.'s ("UTMG") motion for summary judgment and stated that the Court would subsequently issue an opinion fully setting forth the reasons for its ruling. On March 12, 2010, Plaintiff Ilse Bock ("Plaintiff") filed a motion to alter or amend the Court's order granting Defendant's motion for summary judgment. (D.E. #112.) UTMG filed a response in opposition on March 15, 2010. The Court now issues this memorandum opinion setting forth the reasons for its decision and **DENIES** Plaintiff's motion to alter or amend.

I. BACKGROUND

Plaintiff brings this action for medical malpractice against UTMG on behalf of decedent Hans Bock ("Mr. Bock").[1] A 73-year old diagnosed with hepatoma secondary to Hepatitis C,

---

[1] Federal jurisdiction exists pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy is greater than $75,000.

Mr. Bock received treatment from UTMG physicians at the University of Tennessee Bowld Hospital in Memphis from September 22, 2003 until his death on October 15, 2003. (Ex. 3 to Def.'s Mot. for Summ. J.: Aff. of Michael Dragutsky, M.D. ("Dragutsky Aff.") 2; Ex. 4 to Def.'s Mot. for Summ. J.: Aff. of Phillip Zeni, M.D. ("Zeni Aff.") 2.) An affidavit submitted by UTMG from Dr. Phillip Zeni, an interventional radiologist, describes the course of treatment provided to Mr. Bock as follows:

> [Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram was performed which revealed active bleeding at a branch of the right hepatic artery from a non emoblized tumor at the right upper pole of the liver. This bleeding was stopped by emoblization[,] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

(Zeni Aff. 2.) An affidavit from Dr. Michael Dragutsky, a gastroenterologist, recites substantially the same facts. (Dragutsky Aff. 2.) Mr. Bock suffered from post-surgical internal bleeding and succumbed to hypoxia, dying on October 15, 2003. (Id. 2-3.)

The affidavits from Drs. Dragutsky and Zeni state that Mr. Bock received medical treatment in conformity with the standard of care[2] as it existed in Memphis, Tennessee in 2003. (Dragutsky Aff. 2-3; Zeni Aff. 2.) Although Plaintiff's expert disagrees with the conclusion that Mr. Bock received treatment that complied with the applicable standard of care, there is no dispute as to the other facts surrounding UTMG's provision of medical services to Mr. Bock. (See Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J.: Sworn Aff. of James Shull, M.D. ("Shull

---

[2] The Court will refer to the applicable "standard of care" in the singular, partly for ease of reference and partly because this formulation is more favorable to Plaintiff. The Court notes, however, that more than one standard of care may be at issue.

Aff.") 22 (adopting testimony from Dr. Shull's affidavit of 12/12/09); see also Dec. 12, 2009 Aff. of Dr. Shull ("Shull Aff. of Dec. 12th") ¶¶ 3-5.)) Stated succinctly, Plaintiff's expert opines that UTMG's physicians breached the standard of care first in deciding to perform chemo-emoblization and radiofrequency ablation[3] and then, after having performed these procedures, in failing to diagnose and respond to Mr. Bock's continued internal bleeding. (See Shull Aff. of Dec. 12th ¶ 8.)

Plaintiff filed suit alleging negligence, medical malpractice, and wrongful death against UTMG, Dr. Rene Davila, Dr. Abbas Chamsudin, Shelby County Healthcare Corporation, the Regional Medical Center, Tabitha Young Bailey, and others, in the Circuit Court for Shelby County (Tennessee) on October 15, 2004. Almost three years later, on October 5, 2007, Plaintiff non-suited her case against the two remaining defendants, Dr. Rene Davila and UTMG.[4] On September 30, 2008, the Plaintiff filed the instant matter in the United States District Court for the Western District of Tennessee against UTMG only, alleging that the actions of Mr. Bock's treating physicians are imputable to UTMG under the theory of respondeat superior.

UTMG moved for summary judgment on December 1, 2009. On January 4, 2010, the Court granted Plaintiff additional time to file a response. Plaintiff filed her response on January 15, 2010, and UTMG filed a reply on January 29, 2010. In its motion, UTMG argues that Plaintiff's sole expert, James H. Shull, M.D. ("Dr. Shull"), is not competent to render testimony in this case and, therefore, Plaintiff cannot establish the elements of her cause of action.

---

[3] It seems uncontested that these two procedures entailed serious risks for Mr. Bock. (See Dragutsky Aff. 2; Zeni Aff. 2.)

[4] The record in this Court does not clearly establish why the other defendants were no longer a part of the state court action at the time of Plaintiff's non-suit.

**II. LEGAL STANDARD**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998). Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a

reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586.

**III. ANALYSIS**

**A. Expert Witness Competency under Tenn. Code Ann. § 29-26-115(b)**

In civil actions pending in federal court, "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed. R. Evid. 601. Tennessee law, which the parties agree governs this case, requires a proffered expert witness in a medical malpractice case to meet—subject to limited exception[5]—the qualifications set forth in Tenn. Code Ann. § 29-26-115(b) before giving expert testimony as to the alleged professional negligence of a medical provider. Therefore, the Court must determine whether Plaintiff's sole expert witness is competent to testify under Tenn. Code Ann. § 29-26-115(b). See, e.g., Legg v. Chopra, 286 F.3d 286, 292 (6th Cir. 2002).

To succeed in a medical malpractice action brought under Tennessee law, a plaintiff must "carry the burden of proving (1) the recognized standard of professional care, (2) that the defendant failed to act in accordance with the applicable standard of care, and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 92 (Tenn. 1999). Unless the alleged negligence is so obvious as to be within the ken

---

[5] Tennessee law allows the trial court to "waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available." Tenn. Code Ann. § 29-26-115(b). The Court has not been asked to waive subsection (b).

5

of the average layperson,[6] a plaintiff must produce expert testimony to sustain allegations of malpractice. Bowman v. Henard, 547 S.W.2d 527, 530-31 (Tenn. 1977) ("It is the established law in Tennessee that malpractice actions involving issues of negligence and proximate cause require expert testimony unless the act of alleged malpractice lies within the common knowledge of a layman.") (internal citation omitted); see Hessmer v. Miranda, 138 S.W.3d 241, 244 (Tenn. Ct. App. 2003). Thus, a medical malpractice plaintiff must offer expert testimony to prove "the recognized standard of acceptable practice in the profession and specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29-26-115(a)(1).

Tennessee law defines a competent expert as one who

> was licensed to practice as a healthcare professional in the state or a contiguous bordering state in a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn. Code Ann. § 29-26-115(b).[7] It is therefore imperative that, in addition to meeting the other prerequisites for giving testimony, the proffered expert have practiced a relevant profession or specialty in the year preceding the date of the alleged malpractice. See Church v. Perales, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000).

An expert witness need not practice in the specialty at issue to be qualified to render an opinion as to the specialty's standard of care. Searle v. Bryant, 713 S.W.2d 62, 65 (Tenn. 1986); see Goodman v. Phythyon, 803 S.W.2d 697, 702 (Tenn. Ct. App. 1990) ("Although there is no requirement under the statute that the witness practice the same specialty as the defendant, the

---

[6] There is no contention that this "common knowledge" exception applies in the instant case.
[7] The Court notes that the strictures of the locality rule apply with equal force to witnesses offered by defendant medical providers. E.g., Carpenter v. Klepper, 205 S.W.3d 474, 484 (Tenn. Ct. App. 2006).

witness must be sufficiently familiar with the standard of care of the specialist and be able to give relevant testimony on that subject."). When the proffered expert does not practice in the specialty at issue, however, the witness must demonstrate familiarity with the field of practice and the standards that govern it. Bravo v. Sumner Reg'l Health Sys., 148 S.W.3d 357, 367 (Tenn. Ct. App. 2003). Similarly, it is sometimes "necessary to look beyond the nomenclature of the [expert's] field of specialty" to assess the competency of the potential witness. Id. at 365.

Just as a plaintiff may not prevail by offering testimony as to a national—rather than a local—standard of care, see, e.g., Robinson v. LeCorps, 83 S.W.3d 718, 724 (Tenn. 2002), testimony regarding general standards applicable to all medical doctors regardless of specialty is insufficient to prove medical malpractice, Cardwell v. Bechtol, 724 S.W.2d 739, 754-55 (Tenn. 1987); see, e.g., Brown v. Kudsk, No. 02A01-9611-CV-00291, 1998 WL 34190563, at *5 (Tenn. Ct. App. Jan. 2, 1998). Likewise, a proffered expert may not establish competency to testify by "simply recit[ing] familiarity with or knowledge of" the applicable standard of care. Kenyon v. Handal, 122 S.W.3d 743, 762 (Tenn. Ct. App. 2003); see Roberts v. Bicknell, 73 S.W.3d 106, 113 (Tenn. Ct. App. 2001) ("[W]e realize that a mere ritualistic incantation of statutory buzz words evidences very little. Rather, we must look at the expert's opinion to determine if it is based upon trustworthy facts or data sufficient to provide some basis for the opinion.") (internal quotation marks and citation omitted). The witness must instead point to specific facts and evidence revealing the basis for his asserted knowledge of the standard of care in the specialty at issue. See, e.g., McDaniel v. Rustom, No. W2008-00674-COA-R3-CV, 2009 WL 1211335, at *12 (Tenn. Ct. App. May 5, 2009); Carmichael v. Bridgeman, No. 03A01-9904-CV-00124, 2000 WL 124843, at *3-4 (Tenn. Ct. App. Jan. 26, 2000) ("[W]e find no support for the proposition that a witness' statement that he or she is familiar with the standard of care, ipso facto, renders

that testimony relevant and admissible."); Whittemore v. Classen, 808 S.W.2d 447, 455 (Tenn. Ct. App. 1991) (stating that the witness must testify as to knowledge of the standard of care and that this knowledge "must be shown by evidence"). This requirement holds even if the witness formerly practiced in the specialty in question, see Waterman v. Damp, No. M2005-01265-COA-R3-CV, 2006 WL 2872432, at *9 (Tenn. Ct. App. Oct. 9, 2006), perm. app. dismissed (Tenn. Feb. 26, 2007), or the witness asserts that the defendant was essentially providing services equivalent to those of the witness' specialty, see Lockard v. Bratton, No. W2007-02820-COA-R3-CV, 2009 WL 275783, at *5 (Tenn. Ct. App. Feb. 4, 2009) (affirming trial court's exclusion of gynecologist as incompetent to testify as to standard of care applicable to general surgeon where the witness' opinion was based on the assertion that a general surgeon was "basically" providing gynecological services), perm. app. denied (Tenn. Aug. 17, 2009).

**B. Qualifications of Plaintiff's Expert**

Plaintiff's sole proffered expert, Dr. Shull, is a former surgical oncologist who currently works as a general practitioner in Memphis. (James H. Shull, M.D., Dep. of Dec. 23, 2009 ("Shull Dep.") 9, 10, 58.) Dr. Shull graduated from Northwestern University Medical School in 1974. (Shull Aff. ¶ 1.) His training included a surgical internship, a surgical residency, and a surgical-oncology fellowship. (Id. ¶ 4.) After completing his medical training, Dr. Shull held various positions, including: Clinical Associate at the National Cancer Institute (Surgery Branch) from 1979 to 1980; Senior Investigator (Surgery Branch) at the National Cancer Institute from 1981 to 1982; Assistant Professor of Surgery at the University of Southern California in 1984; Chief of Surgery at Eastwood Medical Center from 1992 to 1994; Attending Staff Physician at Saint Francis Hospital from 1986 to 1995; and Consulting Physician at Saint Francis Hospital from 1995 to 2006. (Id. ¶¶ 6, 10, 13.) In 1988, Dr. Shull began transitioning from performing

8

surgeries[8] and has been a general practitioner since 1998. (Shull Dep. 11; see Shull Aff. ¶ 17.) Dr. Shull last performed a surgical procedure in a hospital in 1998. (Shull Dep. 26-27.) The only surgical procedures Dr. Shull has performed since 1998 have been minor office surgeries, such as the removal of moles.[9] (Shull Dep. 12.) In Dr. Shull's career, he has treated liver cancer only once. (Id. at 76.)

There is no dispute that, in the year preceding the alleged malpractice in this case, Dr. Shull was duly licensed to practice medicine in the State of Tennessee and was practicing in the Memphis community. The question is whether in the year before Mr. Bock's death Dr. Shull was engaged in the practice of a relevant profession or specialty such that Dr. Shull is competent to testify regarding the specific treatment for a patient with terminal liver cancer—including, a chemo-emoblization performed by an interventional radiologist (Dr. Abbas Chamsuddin), a radiofrequency ablation performed by a gastroenterologist/hepatologist (Dr. Rene Davila), and subsequent post-procedure care provided to Mr. Bock, which also involved care from another gastroenterologist (Dr. Caroline Riley).

Plaintiff argues that Dr. Shull is qualified to opine on the applicable standard of care in spite of the fact that in 2002 and 2003 he was a general practitioner who did not treat patients in hospital settings for any condition, let alone terminal liver cancer. Initially, Plaintiff relies upon the fact that Dr. Shull has remained current with his Continuing Medical Education hours, attended medical seminars in Memphis, taken medical courses on the internet, and maintained subscriptions to two national medical journals—one on surgery and the other on pain

---

[8] Dr. Shull testified that he decided to transition from surgery to general practice around 1988 because he found learning how to perform laparoscopic surgery—which was becoming prevalent at that time—too difficult. (Shull Dep. 24-25.)

[9] There is some discrepancy in the record as to whether Dr. Shull performed his last hospital surgery in 1998 or 1999. While most references indicate the year as 1998, Dr. Shull is not certain of the year, and it may have been 1999. The Court finds this difference immaterial, but will use 1998, as that is the year most frequently used by the parties and Dr. Shull. Even if the correct year were 1999, the Court's decision would remain unaffected.

management. (Shull Aff. ¶ 19.) Dr. Shull's testimony on this point, however, is very vague and provides no indication as to how any of these activities were relevant to the specific standard of care relevant in this case. Plaintiff further relies upon Dr. Shull's testimony that he was at the time of the alleged malpractice a Consulting Staff Physician at St Francis Hospital—which allowed him admitting privileges and (at least theoretically) involved interaction with physicians on staff[10]—and that Dr. Shull regularly reviewed the records of his patients receiving hospital care in 2002 and 2003. (Id.) Again, however, Dr. Shull does not indicate that he has ever been consulted on the types of procedures performed on Mr. Bock; that any of his patients during this period (or at any other time) underwent these procedures; or even that any of his patients whose records he reviewed during 2002 and 2003 were treated for internal bleeding while hospitalized.[11] To the contrary, Dr. Shull admits in his deposition that he has treated a patient with liver cancer only once in his career; that he has never performed chemo-emobilization or radiofrequency ablation; that he has never referred anyone to have these procedures performed; that he has never recommended these procedures; and that he has never monitored a patient who is recovering from either procedure. (Shull Dep. 76, 98-99.) Given Dr. Shull's complete lack of experience with the two procedures in question, the Court finds that Dr. Shull is clearly not competent to testify regarding whether it was appropriate to perform chemo-embolization and radiofrequency ablation; whether Mr. Bock's physicians complied with the standard of care in executing these procedures; or whether Mr. Bock received appropriate post-procedure care immediately afterwards. See, e.g., Mettes v. John, M2008-00901-COA-R3-CV, 2009 WL 1422987, *10-11 (Tenn. Ct. App. May 20, 2009).

---

[10] Dr. Shull, however, has not seen patients in a hospital since 1998. (Shull Dep. 59.)
[11] Thus, there is no evidence that Dr. Shull has reviewed the records of any other Memphis area patients who, like Mr. Bock, suffered internal bleeding while hospitalized following a chemo-emolization or radiofrequency ablation.

Thus, the only remaining question for the Court concerning Dr. Shull is whether he is competent to testify as to the care Mr. Bock received in the days following the procedures—namely, whether Mr. Bock's treating physicians failed to diagnose and adequately respond to his intra-abdominal bleeding. Dr. Shull's qualifications to give testimony on this aspect of Plaintiff's claim are arguably not as weak because, as a surgeon who treated patients in hospitals prior to 1998, Dr. Shull would have likely acquired knowledge and experience in identifying and treating post-operative internal bleeding. The care at issue in this case, though, occurred approximately five years after Dr. Shull last treated a patient in a hospital setting. Even beyond this temporal issue, Dr. Shull's opinion plainly relies upon a standard of care applicable to all medical providers rather than a standard of care applicable to a relevant specialty in the Memphis community. (See Shull Dep. 57-58 (containing Dr. Shull's testimony that, although he is not familiar with the standard of care for the specialties at issue, he is familiar with the standard of care for treatment of intra-abdominal bleeding); see also id. at 76-77.) Tennessee law is unambiguous in holding that testimony as to a general standard of care across specialties does not establish the standard of care in a medical malpractice action. See, e.g., Harris v. Jain, No. E2008-01506-COA-R3-CV, 2009 WL 2734083, at *7 (Tenn. Ct. App. Aug. 31, 2009) ("Testimony of a general standard of care applicable to all doctors will not satisfy the statutory burden.") (citing Cardwell, 724 S.W.2d at 754.) This rule is logical since a physician's identification of a medical problem and the determination of the proper response requires knowledge specifically relevant to the patient's particular condition and needs as well as the possible complications that can arise. Never having treated a patient following chemo-emoblization and/or radiofrequency ablation, Dr. Shull lacks any firsthand knowledge of what the standard of care required post-procedure as to diagnosing or treating internal bleeding.

Plaintiff attempts to rely on Dr. Shull's contention that he has conducted research, including internet research, to fill the gaps in his knowledge caused by no longer practicing in the area of surgical oncology. This argument, too, is unavailing for Plaintiff. First, Dr. Shull's reliance on the internet and other secondary sources very strongly suggests that Dr. Shull is applying a national rather than a local standard of care, which is impermissible. See, e.g., Mabon v. Jackson-Madison County Gen'l Hosp., 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997). Second, and more importantly, it reveals that Dr. Shull is not basing his standard of care testimony on personal knowledge. Tennessee law requires that a proffered expert's knowledge of the standard of care in a profession or specialty be obtained through personal, firsthand experience either in the community or a similar community. Eckler v. Allen, 231 S.W.3d 379, 386-87 (Tenn. Ct. App. 2006) ("Under Tennessee Code Annotated § 29-26-115(a)(1), knowledge of the applicable standard of care must be either firsthand knowledge of the standard of care by one who practices in the community in which the defendant practices, or firsthand knowledge by one who practices in a community demonstrated to be similar to that of the defendant."). Recourse to secondary sources decoupled from practical application does not satisfy the requirement that knowledge of the standard of care be based on personal experience.

Therefore, the Court finds that Dr. Shull has not demonstrated that in 2002 and 2003 he was engaged in the practice of a relevant practice or specialty upon which he may base competent testimony. As Plaintiff's sole proffered expert witness is not qualified to give testimony under Tenn. Code Ann. § 29-26-115, summary judgment in favor of UTMG is proper.

## C. Plaintiff's Motion to Alter or Amend

After this Court issued its order granting UTMG's motion for summary judgment, Plaintiff filed a motion to alter or amend under Rule 59(e) or, in the alternative, Rule 52(b) of the

12

Federal Rules of Civil Procedure. The gravamen of Plaintiff's motion is a request that the Court consider the entire deposition given by Dr. Shull (rather than simply the excerpts supplied by UTMG) and then reverse its prior order granting UTMG's motion for summary judgment. Having now reviewed Dr. Shull's entire deposition, the Court's decision is unchanged, and the Court finds that it would have granted UTMG's motion even if it had received and considered the entire deposition prior to granting summary judgment in favor of UTMG.

The Court also notes that Plaintiff's motion makes much of the fact that UTMG filed its reply to her response in opposition to UTMG's motion for summary judgment without first seeking leave from the Court. Although Plaintiff properly points out that the scheduling order in this case required parties to obtain leave to file a reply, Plaintiff's objection to the reply is untimely. If Plaintiff wished to have UTMG's reply stricken, she should have moved to do so soon after it was filed on January 29th, not weeks later. Therefore, while the Court has considered the entire deposition subsequently filed by Plaintiff, Plaintiff's motion to alter or amend is nevertheless denied.

## IV. CONCLUSION

For the foregoing reasons, UTMG's motion for summary judgment is **GRANTED**, and this case is **DISMISSED**. Furthermore, Plaintiff's motion to alter or amend is **DENIED**. Accordingly, judgment shall enter in favor of Defendant.

**IT IS SO ORDERED**, this 29th day of March, 2010.

                                            s/Bernice Bouie Donald
                                            **BERNICE BOUIE DONALD**
                                            **UNITED STATES DISTRICT JUDGE**