**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**ISLE BOCK, Individually and as
Next of Kin, Surviving Spouse, Next Friend
and Personal Representative of HANS BOCK,
deceased,**

**Plaintiff,**

**v.**                                             **Case 2:08-cv-02650-STA-cgc**

**UT MEDICAL GROUP, INC.,**

**Defendant.**

---

**REPORT AND RECOMMENDATION ON UT MEDICAL GROUP, INC.'S MOTION
FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant UT Medical Group, Inc.'s ("UTMG") Motion for Summary

Judgment. (Docket Entry "D.E." #134). The instant motion was referred to the Magistrate Judge

for Report and Recommendation. (D.E. #141). For the reasons set forth herein, the Magistrate

Judge recommends that UTMG's Motion for Summary Judgment be GRANTED.

**I. Introduction**

The instant case arises from allegations of medical malpractice against UTMG on behalf of

decedent Hans Bock ("Mr. Bock") by his surviving spouse, Isle Bock ("Mrs. Bock"). Mr. Bock

was a seventy-three year old patient diagnosed with hepatoma secondary to Hepatitis C and received

treatment from UTMG physicians at the University of Tennessee Bowld Hospital in Memphis,

Tennessee from September 22, 2003 until his death on October 15, 2003. Mr. Bock's course of

treatment was summarized as follows:

[Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram was performed which revealed active bleeding at a branch of the right hepatic artery from a non embolized tumor at the right upper pole of the liver. This bleeding was stopped by emoblization[,] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

(March 29, 2010 Memorandum Opinion "Memorandum Opinion" at 2; March 26, 2012 Appeal

Order at 2). Mr. Bock continued to suffer from post-surgical internal bleeding and succumbed to

hypoxia on October 15, 2003. (Memorandum Opinion at 2; Appeal Order at 2).

Plaintiff initially filed suit alleging negligence, medical malpractice, and wrongful death

against UTMG, Dr. Rene Davila, Dr. Abbas Chamsudin, Shelby County Healthcare Corporation,

the Regional Medical Center, Tabitha Young Bailey, and others, in the Circuit Court for Shelby

County, Tennessee. Almost three years later, Plaintiff non-suited her case against the two remaining

Defendants, Dr. Rene Davila and UTMG. On September 30, 2008, Plaintiff filed her case in this

Court against UTMG only, alleging that the actions of Mr. Bock's treating physicians are imputable

to UTMG under the theory of respondeat superior.

UTMG moved for summary judgment on December 1, 2009 and argued that Plaintiff's sole

expert, Dr. James H. Shull, M.D. ("Dr. Shull"), a former surgical oncologist who has been practicing

as a general practitioner since 1998 or 1999 in Memphis, Tennessee, was not competent to testify

as an expert witness. (D.E. #60). On February 26, 2010, United States District Judge Bernice B.

Donald concluded that Dr. Shull did not meet the criteria set forth under Tennessee Code Annotated

Section 29-26-115(b) to testify as an expert witness in this case. Accordingly, Judge Donald granted

UTMG's Motion for Summary Judgment and dismissed Plaintiff's case. (D.E. #109). In a

subsequent Memorandum Opinion on UTMG's Motion for Summary Judgment (D.E. #117), Judge Donald set forth her reasoning for concluding that Dr. Shull was not competent to testify.

In her Memorandum Opinion, Judge Donald reasoned that Dr. Shull had been proffered to testify that "UTMG's physicians breached the standard of care first in deciding to perform chemo-emoblization and radiofrequency ablation and then, after having performed these procedures, in failing to diagnose and respond to Mr. Bock's continued internal bleeding." (Mem. Op. at 3). With respect to whether Dr. Shull was competent to testify regarding the decision to perform chemo-emoblization and radiofrequency ablation, Judge Donald relied on the facts that Dr. Shull has never performed either procedure, has never recommended or referred anyone to have these procedures performed, has never monitored a patient who is recovering from either procedure, and has only treated liver cancer once during his career. (Mem. Op. at 8-10). Thus, Judge Donald concluded that Dr. Shull had a "complete lack of experience with the two procedures in question" and was "clearly not competent to testify regarding whether it was appropriate to perform chemo-emoblization and radiofrequency ablation; whether Mr. Bock's physicians complied with the standard of care in executing these procedures; or whether Mr. Bock received appropriate post-procedure care immediately afterwards." (Mem. Op. at 10).

With respect to whether Dr. Shull was qualified to testify as to the care Mr. Bock received in the days following the procedure—namely, whether Mr. Bock's treating physicians failed to diagnose and adequately respond to his intra-abdominal bleeding—Judge Donald concluded as follows: "Dr. Shull's qualifications to give testimony on this aspect of Plaintiff's claim are arguably not as weak because, as a surgeon who treated patients in hospitals prior to 1998, Dr. Shull has likely acquired knowledge and experience in identifying and treating post-operative internal

bleeding." (Mem. Op. at 11). However, Judge Donald found that the care at issue in this case "occurred approximately five years after Dr. Shull last treated a patient in a hospital setting." (*Id.*) Further, Judge Donald reasoned that, "[e]ven beyond this temporal issue, Dr. Shull's opinion plainly relies upon a standard of care applicable to all medical providers rather than a standard of care applicable to a relevant specialty in the Memphis community." (*Id.*) Judge Donald concluded that Tennessee law is "unambiguous in holding that testimony as to a general standard of care across specialties does not establish the standard of care in a medical malpractice action." (*Id.*) Judge Donald determined that, "[n]ever having treated a patient following chemo-emoblization and/or radiofrequency ablation, Dr. Shull lacks any firsthand knowledge of what the standard of care required post-procedure as to diagnosing or treating internal bleeding." (*Id.*)

Judge Donald's considered Plaintiff's contention that Dr. Shull has "conducted research, including internet research, to fill the gaps in his knowledge caused by no longer practicing in the area of surgical oncology" but found this argument also to be "unavailing for Plaintiff." (*Id.* at 12). Judge Donald determined that Dr. Shulll's "reliance on the internet and other secondary sources very strongly suggests that Dr. Shull is applying a national rather than local standard of care, which is impermissible." (*Id.*) Judge Donald concluded that, "more importantly," "Tennessee law requires that a proffered expert's knowledge of the standard of care in a profession or specialty be obtained through personal, firsthand experience in the community or a similar community." (*Id.*) Relying upon *Eckler v. Allen*, 231 S.W.3d 379, 386-87 (Tenn. Ct. App. 2006), Judge Donald held that Tennessee Code Annotated Section 29-26-115(a)(1) requires that "knowledge of the applicable standard of care must be either firsthand knowledge of the standard of care by one who practices in the community in which the defendant practices, or firsthand knowledge by one who practices in

a community demonstrated to be similar to that of the defendant." *Id.* Ultimately, Judge Donald concluded that "[r]ecourse to secondary sources decoupled from practical application does not satisfy the requirement that knowledge of the standard of care be based upon personal experience." (Mem. Op. at 12). Accordingly, Judge Donald determined that Dr. Shull was not competent to testify as to the standard of care in the instant case and that summary judgment in favor of UTMG was appropriate. (*Id.*)

Plaintiff appealed Judge Donald's grant of summary judgment to the United States Court of Appeals for the Sixth Circuit on April 28, 2010. On August 11, 2011, the Tennessee Supreme Court issued an opinion in *Shipley v. Williams*, 350 S.W.3d 527 (Tenn. 2011), which rejected the Tennessee Court of Appeal's ruling in *Eckler* and held that, under the locality rule in Tennessee Code Annotated Section 29-26-115(b), a proffered medical expert is not required to demonstrate firsthand and direct knowledge of a medical community and the appropriate standard of medical care there in order to be competent to testify in a medical malpractice case.

Upon consideration of the appeal post-*Shipley*, the Sixth Circuit determined that there were two questions with respect to whether Dr. Shull should be permitted to testify in the instant case. *See Legg v. Chopra*, 286 F.3d 286, 291-92 (6th Cir. 2002). First, a court must determine whether Dr. Shull is competent to testify under Rule 601 of the Federal Rules of Evidence and state substantive law. Next, a court must consider whether the witness is qualified to testify under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Beginning with witness competency, the Sixth Circuit concluded that the record does not permit a resolution of this question "[i]n light of the changed landscape in Tennessee law" after the *Shipley* ruling. (Appeal Order at 2). The Sixth Circuit found that "it is somewhat unclear whether

the district court's application of *Eckler* was only in the context of Tennessee's locality rule—the rationale rejected in *Shipley*—or more broadly focused on Dr. Shull's competency, without regard to the locality—a position that arguably is still good law, even after *Shipley*." (Appeal Order at 7-8).

Ultimately, the Sixth Circuit remanded the instant case to this Court to determine whether, under Tennessee Code Annotated Section 29-26-115, as construed in *Shipley*, Dr. Shull is competent to testify about three questions at issue: (1) were the decisions to perform the chemo-embolization and radiofrequency ablation made in accordance with the appropriate standard of care?; (2) were the procedures performed in accordance with the appropriate standard of care?; and (3) was Bock's treatment after the procedure performed in accordance with the appropriate standard of care?  The Sixth Circuit advised that the "answer may be yes to some questions, and no to others."  The Sixth Circuit further instructed that, if Dr. Shull is found to be competent to testify under Rule 601, this Court should proceed to address whether he is also qualified to testify under Rule 702.

## II.  Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999).  The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998). "Conclusory statements unadorned with specific facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### III. Proposed Conclusions of Law

In accordance with the Sixth Circuit's instructions, the Court will begin with the competency of Dr. Shull under Rule 601 and state substantive law and address the three proffered areas of Dr.

Shull's testimony. Tennessee Code Annotated Section 29-26-115 sets forth the required elements

of proof for a medical malpractice claim in subsection (a) and the requirements for competency of

a proffered medical expert in subsection (b), as follows:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state of a profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115.

The first requirement that a proffered expert practice in the community of the defendant

medical provider or a similar community is known as the locality rule, and this was the requirement

at issue in *Eckler* and *Shipley*. *Shipley*, 350 S.W.3d at 532. The second requirement is that the

proffered expert practice a relevant profession or specialty in the year preceding the date of the

alleged malpractice. An expert witness need not practice in the specialty at issue in the case to be

qualified to render an opinion as to the specialty's standard of care. *Searle v. Bryant*, 713 S.W.2d

62, 65 (Tenn. 1986). However, the expert witness "must be sufficiently familiar with the standard

of care of the speciality and be able to give relevant testimony on that subject." *Goodman v. Phythyon*, 803 S.W.2d 697, 702 (Tenn. Ct. App. 1990). When the proffered expert does not practice in the specialty at issue, the witness must demonstrate familiarity with the field of practice and the standards that govern it. *Bravo v. Sumner Reg'l Health Sys.*, 148 S.W.3d 357, 367 (Tenn. Ct. App. 2003).

As an initial point, the parties do not dispute that the locality rule is not at issue in the instant case. Dr. Shull is a Memphis, Tennessee physician who has practiced in Memphis, Tennessee from 1986 until the present. Instead, the dispute is whether Dr. Shull, who transitioned from performing surgeries around 1998 to 1999 into general practice, meets the requirement that he practiced a relevant profession or specialty within one year of the date of the alleged malpractice in 2003.

With respect to whether Dr. Shull is competent to testify as to the first two questions set forth by the Sixth Circuit—namely, whether decisions to perform the chemo-embolization were made in accordance with the appropriate standard of care and whether the procedures were performed in accordance with the appropriate standard of care—the District Court's March 29, 2010 Memorandum Opinion did not rely upon *Eckler* or its personal, first-hand or direct knowledge requirement in the determination that he was not qualified to testify as to these issues. Instead, the Memorandum Opinion relied upon Dr Shull's "complete lack of experience with the two procedures in question" to determine that he would not have relevant testimony on those subjects. A review of Dr. Shull's proffered testimony supports the conclusion that Dr. Shull does not have any experience with the decision to perform or the performance of these procedures. (Shull Dep. at 98-99). Thus, the Court does not find a reason post-*Shipley* to recommend that the District Court's conclusions in the Memorandum Opinion be altered on remand. As such, the Magistrate Judge recommends that

9

Dr. Shull is not competent to testify on the aforementioned issues.

With respect to the question of whether Mr. Bock's treatment after the procedure was performed in accordance with the appropriate standard of care, the District Court did rely upon *Eckler* and its personal, first-hand or direct knowledge requirement in the determination that Dr. Shull was not qualified to testify as to these issues. Accordingly, this issue appears to warrant further consideration post-*Shipley* on remand.

Upon review, it is important to note at the outset that the Memorandum Opinion relied upon *Eckler*'s personal, first-hand or direct knowledge requirement only as one of its bases for the determination that Dr. Shull could not testify on the standard of care for the post-procedure treatment; the Sixth Circuit recognized that this and noted that the District Court relied only on *Eckler* "in part." (Appeal Order at 7). In addition to its analysis under *Eckler*, the District Court's Memorandum Opinion articulated several reasons that Dr. Shull was not competent to testify on the issue of post-procedure care. First, the District Court found that, while Dr. Shull had previously practiced surgery prior to 1998 or 1999, Dr. Shull had not treated a patient in a hospital setting since that time. (Mem. Op. at 11). Thus, nearly five years had elapsed from Dr. Shull's practice of surgery until Mr. Bock's treatment at issue in this case. (*Id.*) For this reason, the District Court found that Dr. Shull had not demonstrated that he was engaged in the practice of a relevant profession or specialty within one year of the alleged medical malpractice as required by Tennessee Code Annotated Section 29-26-115(b). (*Id.*)

Next, the District Court found that Dr. Shull was not competent to testify as to whether Mr. Bock's post-procedure treatment was in accordance with the appropriate standard of care because his "opinion plainly relies upon a standard of care applicable to all medical providers rather than a

standard of care applicable to a relevant specialty in the Memphis community." (*Id.*) Specifically, the District Court relied upon Dr. Shull's deposition testimony that he is not familiar with the standard of care of the specialties at issue in this case—namely hepatology, gastroenterology, or interventional radiology—but instead was familiar "with the standard of care of intra-abdominal bleeding and the complications of their interventional radiology and the failure to diagnose inter-abdominal bleeding." (Shull Dep. at 57-58). The District Court also relied upon Dr. Shull's internet research to "fill the gaps in his knowledge caused by no longer practicing in the area of surgical oncology" and found that his "reliance on the internet and other secondary sources very strongly suggests that Dr. Shull is applying a national rather than a local standard of care . . . ." (Mem. Op. at 12; Shull Dep. at 19, 21). The District Court concluded that "Tennessee law is unambiguous in holding that testimony as to a general standard of care across specialties does not establish the standard of care in a medical malpractice action." (*Id.*) (citing *Herb A. Harris v. Pradunna S. Jain*, No. E2008-01506-COA-R3-CV, 2009 WL 2734083, at *7 (Tenn. Ct. App. Aug. 31, 2009)).

The *Shipley* court expressly stated that it did not alter this rule and did "not adopt a national standard of care in medical malpractice cases." 350 S.W.3d at 553. The *Shipley* court did delve further into the nuances of the local versus national standard of care, opining that "in many instances the national standard is representative of the local standard." *Id.* (citing *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002)). The *Shipley* court advised that "expert medical testimony regarding a broader regional standard or a national standard should not be barred, but should be considered as an element of the expert witness' knowledge of the standard of care in the same or similar community." 350 S.W.3d at 553. Yet, the *Shipley* court required familiarity with the local standard of care before testifying to a national standard, stating as follows: "Only after a medical expert

11

witness has sufficiently established his or her familiarity with the standard of care in the same or similar community as the defendant, may the witness testify that there is a national standard of medical care to which members of his or her profession and/or specialty must adhere." *Id.* "This testimony, coupled with the expert's explanation of why the national standard applies under the circumstances, is permissible and pertinent to support the expert's opinion on the standard of care." *Id.* "The mere mention of a national standard of care should not disqualify an expert from testifying. However, an expert's testimony may not rely solely on a bare assertion of the existence of an applicable national standard of care . . . ." *Id.*

After reviewing Dr. Shull's deposition testimony on remand in light of *Shipley*, Dr. Shull does not provide information to establish his familiarity with the standard of care in Memphis, Tennessee. Instead, he generally states that he is "familiar with the standard of care of intra-abdominal bleeding and the complications of their interventional radiology and the failure to diagnose intra-abdominal bleeding." (Shull Dep. at 57-58; Mem. Op. at 11). The *Shipley* court explicitly reiterated that a medical expert "may not simply assert their familiarity with a standard of professional care in the defendant's community without indicating the basis for their familiarity." 350 S.W.3d at 541 (quoting *Williams v. Baptist Memorial Hosp.*, 193 S.W.3d 545, 553 (Tenn. 2006)). Absent specific evidence of his knowledge of the standard of care in Memphis, Tennessee, the Court recommends that Dr. Shull is not competent to testify as to the standard of care in Memphis, Tennessee on this issue.

Further, as the District Court concluded in the Memorandum Opinion, Dr. Shull's deposition testimony demonstrates that his attempts to refresh his knowledge on the applicable standards of care from the time he ceased practicing as a surgeon consisted entirely of research on national

12

resources. (Shull Dep. at 19, 21, 59, 80). Dr. Shull consulted the National Cancer Institute website and Medscape abstracts to educate himself on the standard of care. (Shull Dep. at 19, 21, 80). There is no indication in the record that these materials had any information that pertained to the standard of care in Memphis, Tennessee or a similar community. Such familiarity is required before a medical expert can rely upon a national standard of care, and it is not present in the instant case.

Additionally, Dr. Shull states that his knowledge of the applicable standard of care for "anything after 1998" was entirely based on his "reading and research" because he "wasn't in the hospital." (Shull Dep. at 59). He also states that his relevant experience giving him familiarity with the applicable standard of care was based upon his practice as a "surgical oncologist," which he ceased practicing in 1998 to 1999. (Shull Dep. at 75). This further goes to demonstrate that he had not been practicing in a relevant profession or specialty for one year before the alleged medical malpractice as required by Tennessee Code Annotated Section 29-26-115(b).

Finally, and of most direct pertinence on remand, the Memorandum Opinion relied upon *Eckler* for the proposition that "Tennessee law requires that a proffered expert's knowledge of the standard of care in a profession or specialty be obtained through personal, first-hand knowledge either in the community or a similar community." (Mem. Op. at 12). It is undoubtedly true that *Shipley* has rejected that requirement under the locality rule as "too restrictive." 350 S.W.3d at 552. Further, as the Sixth Circuit noted, the Tennessee Court of Appeals has recently "seemed to agree with UTMG's characterization of *Shipley* as limiting the holding to the locality rule," stating as follows: "*Shipley* expressly rejected the requirement that a medical expert have 'personal, firsthand, direct knowledge' of the standard of care *in the defendant's community* in order to offer expert testimony on that standard." (Appeal Order at 7) (citing *Walker v. Garabedian*, No. W2010-02645-

13

COA-R3-CV, 2011 WL 6891575, at *6 (Tenn. Ct. App. Dec. 28, 2011)). Ultimately, the Sixth

Circuit instructed this Court to determine "whether the district court's application of *Eckler* was only

in the context of Tennessee's locality rule—the rationale rejected in *Shipley*—or more broadly

focused on Dr. Shull's competency, without regard to the locality—a position that arguably is still

good law, even after *Shipley*." (Appeal Order at 7-8).

As Dr. Shull is a Memphis, Tennessee physician and as Mr. Bock received the treatment

giving rise to his medical malpractice claims in Memphis, Tennessee at UTMG's hospital, the

Magistrate Judge recommends to the District Court on remand that the Memorandum Opinion did

not rely upon *Eckler* in the context of the locality rule. Instead, the Magistrate Judge recommends

that the analysis in the Memorandum Opinion more broadly focused on Dr. Shull's competency,

without regard to the locality. This position is bolstered by the reasoning in the Memorandum

Opinion that Dr. Shull was not competent to testify for the reasons as follows: "Never having treated

a patient following chemo-emoblization and/or radiofrequency ablation, Dr. Shull lacks any

firsthand knowledge of what the standard of care required post-procedure as to diagnosing or

treating internal bleeding." (Mem. Op. at 11). Even post-*Shipley*, a proffered medical expert must

offer testimony relevant to the issue in the case to be deemed a competent expert. *See, e.g.*,

*Goodman v. Phythyon*, 803 S.W.2d 697, 702 (Tenn. Ct. App. 1990). Absent such knowledge, Dr.

Shull may not be permitted to testify pursuant to Tennessee Code Annotated Section 29-26-115.

Finally, even if this Court were to disregard all of the Memorandum Opinion's references

to *Eckler* and Dr. Shull's lack of firsthand knowledge, the Memorandum Opinion had already

concluded that Dr. Shull was not competent to testify due to his lack of relevant experience within

the year prior to the alleged medical malpractice in this case and his testimony regarding a national

rather than local standard of care.  Thus, the Magistrate Judge recommends that there is no reason

to disturb the Memorandum Opinion's conclusions on remand post-*Shipley*.  Thus, the Magistrate

Judge recommends that Dr. Shull is not competent to testify on the issue of whether Mr. Bock's

post-procedure treatment was in accordance with the appropriate standard of care.[1]

## IV.  Conclusion

For the reasons set forth herein, the Magistrate Judge recommends that the District Court on

remand conclude that Dr. Shull is not competent to testify as to whether the decisions to perform the

chemo-embolization and radiofrequency ablation were made in accordance with the appropriate

standard of care, whether the procedures were performed in accordance with the appropriate

standard of care, and whether Mr. Bock's treatment after the procedure was performed in accordance

with the appropriate standard of care.  Accordingly, as Plaintiff does not have competent expert

testimony as required by Tennessee Code Annotated Section 29-26-115(b) to establish the elements

of her cause of action in Section 29-26-115(a), the Magistrate Judge recommends that UTMG's

Motion for Summary Judgment be GRANTED.


**DATED** this 7th day of November, 2012.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

---

[1] As the Magistrate Judge recommends that Dr. Shull is not competent to testify under Rule 601 of the Federal Rules of Civil Procedure and Tennessee Code Annotated Section 29-26-115(b), and as the Sixth Circuit instructed the District Court to proceed to address Dr. Shull's qualification under Rule 702 and *Daubert* only "if Dr. Shull is found competent under state law per Rule 601," (Appeal Order at 13), the Magistrate Judge recommends that the District Court need not address Dr. Shull's qualification to testify under Rule 702 and *Daubert*.

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**