## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **ISLE BOCK, Individually and as Next of Kin, Surviving Spouse, Next Friend, and Personal Representative of HANS BOCK, deceased,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | No. 08-2650-STA-cgc |
| **UT MEDICAL GROUP, INC.,** | ) ) ) | |
| **Defendant.** | ) | |

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant UT Medical Group, Inc.'s ("UTMG") Motion for Summary Judgment (D.E. # 134) filed June 26, 2012. The Court referred this Motion to United States Magistrate Judge Charmiane G. Claxton for issuance of a report and recommendation in an order dated August 2, 2012. (D.E. # 141.) Plaintiff Isle Bock ("Plaintiff" or "Mrs. Bock") filed a response to this Motion on August 3, 2012. (D.E. # 145.) Judge Claxton issued a report and recommendation on November 8, 2012, recommending this Court grant UTMG's Motion. (D.E. # 154.) Bock filed objections to the report and recommendations on November 27, 2012. (D.E. # 156.) For the reasons set forth below, the Court hereby **ADOPTS** the magistrate judge's report and recommendations, **OVERRULES** Bock's objections to same, and **GRANTS** UTMG's Motion for Summary Judgment.

## BACKGROUND

This case is a medical malpractice suit filed by Bock on behalf of her deceased husband, Hans Bock ("Mr. Bock"). Mr. Bock received treatment from UTMG physicians for hepatoma secondary to hepatitis C at the University of Tennessee Bowld Hospital located in Memphis, Tennessee. (Aff. of Michael Dragutsky, M.D. ("Dragutsky Aff.") at 2, D.E. # 60-3; Aff. of Phillip Zeni, M.D. ("Zeni Aff") at 2, D.E. # 60-4.) Mr. Bock received this treatment from September 22, 2003 until his death on October 15, 2003. (Dragutsky Aff. at 2; Zeni Aff at 2.) Dr. Zeni describes Mr. Bock's treatment as follows:

> [Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram was performed which revealed active bleeding at a branch of the right hepatic artery from a non embolized tumor at the right upper pole of the liver. This bleeding was stopped by embolization[,] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

(Zeni Aff. at 2.) Dr. Dragutsky's relates Mr. Bock's treatment in the same terms. (Dragutsky Aff at 2.) Mr. Bock continued to suffer from post-operative bleeding and died of hypoxia on October 15, 2003. (*Id.* at 2-3).

Drs. Dragutski and Zeni agree Mr. Bock received treatment in conformity with the standard of care as it existed in Memphis, Tennessee in 2003. (*Id.* at 2-3; Zeni Aff. at 2.) Plaintiff disputes that Mr. Bock's treatment was in conformity with the applicable standard of care, and adduces the affidavit and deposition of James Shull, M.D. ("Dr. Shull") in support. (Pls. Resp. to Mot. for Summ. Judg. at 2.) There appears to be no other dispute as to UTMG's provision of medical services to Mr. Bock. (January 15, 2010 Aff. of James Shull, M.D. ("Jan. 15 Shull Aff.") ¶ 22, D.E. # 77-1) Dr. Shull opines that the provision of chemo-embolization by

UTMG breached the applicable standard of care; that the manner in which UTMG performed the chemo-embolization breached the applicable standard of care; and that UTMG's subsequent treatment breached the applicable standard of care. (December 12, 2006 Affidavit of Dr. James Shull (Dec. 12 Shull Aff.) ¶ 8, D.E. # 77-1.)

UTMG moved the Court for summary judgment on December 1, 2009, arguing Dr. Shull was not qualified to give expert witness testimony under Tenn. Code Ann. § 29-16-115(b). United States District Judge Bernice B. Donald, relying in part on a decision of the Tennessee Court of Appeals holding that § 29-16-115(a)(1) required a testifying physician's knowledge of an applicable standard of care be obtained through personal, firsthand knowledge, granted UTMG's motion for summary judgment. (Mem. Op. at 12, D.E. # 117, citing *Eckler v. Allen*, 231 S.W.3d 379, 386-87 (Tenn. Ct. App. 2006)). Plaintiff appealed this grant of summary judgment to the Sixth Circuit Court of Appeals. (Notice of Appeal, D.E. # 120, 122.) During the pendency of the appeal, the Tennessee Supreme Court rejected the approach endorsed in *Eckler v. Allen*, holding that a physician's knowledge of an applicable standard of care need not be through personal, firsthand experience. *Shipley v. Williams*, 350 S.W.3d 527, 548-51 (Tenn. 2011). The Sixth Circuit remanded the case to determine whether, after *Shipley*, Dr. Shull was qualified under § 29-16-115(b) to give expert witness testimony as to three questions: "(1) were the decisions to perform the chemo-embolization and radiofrequency ablation made in accordance with the appropriate standard of care?; (2) were the procedures performed in accordance with the appropriate standard of care?; and (3) was [Mr.] Bock's treatment after the procedure performed in accordance with the appropriate standard of care?" (6th Cir. Op. at 8, D.E. # 123.)

UTMG renewed their motion for summary judgment on June 29, 2012. (D.E. # 134.) The Court referred this motion to the magistrate judge for issuance of a report and recommendations on August 2, 2012. (D.E. # 141.) The magistrate judge issued a report and recommendations on November 8, 2012, recommending the Court find Dr. Shull's testimony barred and grant summary judgment to UTMG. (D.E. # 154.) Plaintiff filed objections to the report and recommendations on November 27, 2012, arguing the magistrate judge erred by not considering Dr. Shull's affidavit testimony and by applying the incorrect legal standard to Dr. Shull's qualifications. (D.E. # 156.)

## STANDARD OF REVIEW

A district court may refer a dispositive motion to a magistrate judge for issuance of a report and recommendation.[1] Either party may object to the magistrate judge's report and recommendation within 14 days of service of the proposed findings and recommendations.[2] A district court reviews the properly-objected-to portions of a magistrate judge's report and recommendation on these matters *de novo*.[3] However, the district judge is not obligated to review any portions of the magistrate judge's report and recommendations to which neither party has filed a proper objection.[4]

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Fed. R. Civ. P. 72(b).

[2] Fed. R. Civ. P. 72(b)(2).

[3] Fed. R. Civ. P. 72(b)(3).

[4] *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1374 (6th Cir. 1987).

law."[5]  In reviewing a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence[,]"[6] but instead must view the evidence in the light most favorable to the nonmoving party.[7]  When the movant supports their motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[8]  It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts."[9]  These facts must constitute more than a scintilla of evidence, and must rise to the level that a reasonable juror could find by a preponderance of the evidence the nonmoving party is entitled to a verdict.[10]  To determine whether it should grant summary judgment, the court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[11]

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[12]  The Sixth Circuit interprets this to mean that "the

---

[5] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[6] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Celotex*, 477 U.S. at 324.

[9] *Matsushita*, 475 U.S. at 586.

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[11] *Id.* at 251-52.

[12] *Celotex*, 477 U.S. at 322.

nonmoving party . . . 'put up or shut up' [on] the critical issues of his asserted causes of action."[13]

## **ANALYSIS**

A federal court sitting in diversity must apply the substantive law of the state in which it sits,[14] but will apply federal procedural rules.[15] The Supreme Court has never directly addressed the interaction of *Erie* doctrine with the Federal Rules of Evidence. Specifically, the Court has never addressed the seeming tension between Federal Rules of Evidence 601 and 702. Federal Rule of Evidence 601 states "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."[16] Federal Rule of Evidence 702, however, deals with a witness' qualification to give expert witness testimony rather than his competency.[17] The Sixth Circuit uses a two-step inquiry to resolve this seeming tension in cases involving Tenn. Code Ann. § 19-26-115(b): first, the court looks to witness competency under § 19-16-115(b), a consideration "intimately intertwined with the substantive law"; second, the court looks to the witness' qualifications under F.R.E. 702.[18]

---

[13] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[14] 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[15] *Hanna v. Plumer*, 380 U.S. 460 (1965).

[16] F.R.E. 601.

[17] F.R.E. 702.

[18] *Legg v. Chopra*, 286 F.3d 286, 291-92 (6th Cir. 2002).

In *Shipley*, the Tennessee Supreme Court held "when determining whether a witness is competent to testify, the trial court should look to subsection (b), not subsection (a) [of § 19-16-115]."[19]

Tennessee Code Annotated § 29-26-115 (b) provides in relevant part

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.[20]

In the words of the *Shipley* court, subsection (b) sets forth three requirements.

> The witness must be (1) "licensed to practice in the state or a contiguous bordering state," (2) "a profession or specialty which would make the person's expert testimony relevant to the issues in the case," and (3) must have "had practiced this profession or specialty in one . . . of these states during the year preceding the date that the alleged injury or wrongful act occurred."[21]

Ordinarily, unless the alleged misconduct is so egregious and obvious as to be within the knowledge of an average layperson, a plaintiff must produce expert testimony to sustain allegations of malpractice.[22]

At issue in the instant motion is Dr. Shull's competency under § 29-26-115(b) to testify to the matters that Mrs. Bock must prove at trial under § 29-26-115(a). In particular, UTMG argues that Dr. Shull is not competent to testify as to "[t]he recognized standard of professional practice in the profession and the specialty thereof, if any, that the defendant practices in the

---

[19] *Shipley v. Williams*, 350 S.W. 3d 527, 550 (Tenn. 2011).

[20] Tenn. Code Ann. § 29-26-115(b).

[21] *Shipley*, 350 S.W.3d at 550.

[22] *Bowman v. Henard*, 547 S.W.2d 527, 530-31 (Tenn. 1977).

7

community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred[.]"[23]

The parties do not dispute that Dr. Shull held a license to practice medicine in Tennessee for the relevant time period, so for all three questions, Dr. Shull passes the first inquiry under subsection (b). The parties' arguments instead go to the second and third inquiry under subsection (b): whether Dr. Shull practiced a profession or specialty in Tennessee or a bordering state within the year preceding UTMG's alleged wrongful acts that would make his testimony relevant. There is "no requirement that the witness practice the same specialty as the defendant,"[24] but "the witness must demonstrate sufficient familiarity with the standard of care and the testimony must be probative of the issue involved."[25] As noted above, the Tennessee Supreme Court recently held that the knowledge of the applicable standard of care in the community need not come from first-hand knowledge.[26] However, *Shipley* did not disturb the statutory requirement the proffered witness must have practiced a profession or specialty that makes their testimony relevant, and "[c]ourts must look carefully at the particular issues presented in the case to determine if an expert practices a profession or specialty that would make the expert's testimony relevant to those issues."[27]

---

[23] Tenn. Code Ann. § 29-26-115(a)(1).

[24] *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986).

[25] *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn. 1987).

[26] *Shipley*, 350 S.W.3d 527, 548-51 (Tenn. 2011).

[27] *Shipley*, 350 S.W.3d 527, 556 (Tenn. 2011).

Dr. Shull is a former surgical oncologist who currently practices as a general practitioner in Memphis.[28] He graduated from Northwestern University Medical School in 1974.[29] Dr. Shull completed a surgical internship, a surgical residency, and a fellowship in surgical oncology.[30] Since then, Dr. Shull held various positions: Clinical Associate at the National Cancer Institute from 1979-1980; Senior Investigator (Surgery Branch) at the National Cancer Institute from 1981 to 1982; Assistant Professor of Surgery at the University of Southern California in 1984; Chief of Surgery at Eastwood Medical Center from 1992 to 1994; Attending Staff Physician at Saint Francis Hospital from 1986 to 1995; and Consulting Physician at Saint Francis Hospital from 1995 to 2006.[31] Dr. Shull began transitioning his practice from surgery in 1998, and has been a general practitioner since.[32] Dr. Shull has performed only minor office surgeries since 1998.[33] Dr. Shull has only treated liver cancer once.[34]

The Court finds that, with respect to the questions of whether chemo-embolization or radiofrequency ablation were appropriate in Mr. Bock's case or whether UTMG breached the appropriate standard of care in how UTMG performed those procedures, Dr. Shull was not competent to testify under § 29-26-15. As noted above, § 29-26-15(b) requires that a proffered

---

[28] Shull Dep. 9:21-23, 10:2-12, 58:14-22.

[29] Jan. 15 Shull Aff. ¶ 1.

[30] *Id.* ¶ 4.

[31] *Id.*¶¶ 6, 10, 13.

[32] Shull Dep. 11:14-19; Jan. 15 Shull Aff. ¶ 17.

[33] Shull Dep. 12:1-15. There is some confusion in the record as to when Dr. Shull performed his last hospital surgery. Dr. Shull indicates he is himself not sure of whether he performed his last hospital surgery in 1998 or 1999. Since neither date is within one year of UTMG's alleged wrongful acts, the distinction is immaterial for present purposes.

[34] *Id.* 76:19-21.

expert witness have practiced a profession or specialty in Tennessee or a bordering state within the year preceding the alleged wrongful acts that would make his testimony relevant. Dr. Shull is a general practitioner who has not performed surgery in a hospital setting for any condition, much less liver cancer, since 1998 or 1999. Although Dr. Shull states he has remained current with his continuing education requirements and subscribes to two national journals, that he was a Consulting Staff Physician at St. Francis, and that he has regularly reviewed the records of patients receiving hospital care in 2002 and 2003,[35] he gives no indication as to why these assertions qualify him under § 29-26-15(b) as someone who has practiced a relevant profession or specialty in 2002 or 2003. While, theoretically, these assertions go to whether Dr. Shull kept himself informed about the relevant standard of care, they do not indicate that he was engaged in the practice of a profession or specialty within the year preceding UTMG's alleged wrongful acts.

In contrast, Dr. Shull admits he has only treated a patient with liver cancer once in his career and that was before 1999.[36] Dr. Shull further admits he has never performed a chemo-embolization or radiofrequency ablation.[37] Dr. Shull has neither referred anyone to have these procedures performed by another physician nor recommended these procedures.[38] It seems clear to the Court that Dr. Shull, in 2002 and 2003, was not practicing a profession or specialty that would make his testimony as to the applicable standard of care in recommending or performing a chemo-embolization or a radiofrequency ablation relevant.

---

[35] Jan. 15 Shull Aff. ¶ 19.

[36] Shull Dep. 76: 19-21.

[37] *Id.* 98:10-99:2.

[38] *Id.*

10

Mrs. Bock makes much of the evidence in Dr. Shull's sworn affidavits regarding his familiarity with the applicable standard of care through his prior practice and his continued research and education, stating that these constitute the practice of a relevant profession or specialty in 2002 and 2003.[39] The Court does not agree that attending seminars, continuing medical education, and independent research constitute the practice of a relevant profession or specialty as envisioned under § 29-26-15(b). Mrs. Bock further asserts, without citation, that § 29-26-15(b) does not require an expert witness to actually practice the profession or specialty in the year preceding the alleged wrongful act so long as he maintains his knowledge of the standard of care.[40] This contention is at odds with the plain language of § 29-26-15(b), and the Court cannot agree. Therefore, the Court finds that Dr. Shull is neither competent to testify as to the relevant standard of care with respect to the decision to perform chemo-embolization or radiofrequency ablation, nor is he competent to testify as to the relevant standard of care with respect to the provision of these two techniques.

The remaining question before the Court is whether Dr. Shull is competent to testify as to whether UTMG's post-surgery treatment conformed to the applicable standard of care. Although this is a closer question than the first two presented, the Court finds that he is not. As with the prior two questions, the Court's inquiry turns on whether Dr. Shull practiced a profession or specialty which would make his testimony relevant to the issue of whether UTMG provided the applicable standard of care. Again, Dr. Shull's practice in 2002 and 2003 was a general practice, not a surgical practice. Although Dr. Shull had privileges at St. Francis Hospital, he had not treated a patient in a hospital setting since 1998. Dr. Shull's own words

---

[39] Pl.'s Obj. to R&R at 6, 7, D.E. # 156.

[40] *Id.* at 7.

11

indicate he was engaged in a substantially different type of practice in 2002-2003 than what is at issue here:

> The type of medical care and/or post operative medical care and treatment rendered to Hans Bock, deceased, is no different than the type of medical care that I have provided to patients in Memphis, Shelby County, Tennessee since 1986 *up to 1998 and/or 1999* as a private physician, emergency room physician, surgeon, admitting and/or consulting physician.[41]

The Court finds enough of a distinction between the practice of post-operative care in a hospital setting and a general practice to hold that Dr. Shull was not engaged in the practice of a profession or specialty that would allow him to give testimony relevant to the issue before the Court.

Dr. Shull testified that while he is not familiar with the standard of care for the specialties at issue, he is familiar with the standard of care for treatment of intra-abdominal bleeding.[42] "Where an expert is unfamiliar with the practice of another field and with its standard of care," it is inappropriate to admit generalized evidence as to the standard of care.[43] Dr. Shull's testimony thus gives the Court no basis to conclude that his familiarity with the general standard of care for treatment of intra-abdominal bleeding from his general practice and research makes his general practice one that would make his testimony as to the standard of post-operative care relevant. The Court notes Dr. Shull's testimony of continuing medical education, subscriptions to medical journals, his privileges as Consulting Staff Physician at St. Francis, and his review of medical

---

[41] Jan. 15 Shull Dep. ¶ 16.

[42] Shull Dep. 57:19-58:3.

[43] *Cardwell v. Bechtol*, 724 S.W.2d 739, 755 (Tenn. 1987) (holding where proffered witness only offered general standard of care in obtaining informed consent but was unfamiliar with the specific treatment provided, generalized evidence is contrary to the terms and policy of § 29-26-115. The Court notes this case is pre-*Shipley*. However, the *Cardwell* court does not discuss the locality rule at issue in *Shipley*.

charts of hospitalized patients.[44]  The Court again finds these activities do not constitute the practice of a profession or specialty that would make Dr. Shull's testimony relevant to the issue of whether UTMG met the standard of care due a post-operative patient.  Independent research and review of patient files no more constitutes the practice of medicine than reading casebooks and reviewing case files constitutes the practice of law.

To be clear, the Court does not base its reasoning on the now-rejected rule of *Eckler*.  In *Eckler*, the Tennessee Court of Appeals held that a testifying physician's knowledge of the applicable standard of care in a community must come from personal, firsthand knowledge.[45]  The *Shipley* court held that, instead, a physician testifying as to the relevant standard of care in a community may "educate himself . . . on the characteristics of a medical community in order to provide competent testimony in a variety of ways[.]"[46]  This holding addresses a different question than whether, under subsection (b), a proffered witness has practiced a profession or specialty in Tennessee or a bordering state within the preceding year.  The Court notes Mrs. Bock's Objections to the Report and Recommendations cites extensively to portions of Dr. Shull's deposition testimony and affidavits indicating the lengths to which Dr. Shull went to stay current with his medical knowledge.[47]  However, the Court finds Dr. Shull's attempts to stay current as to the standard of care in post-surgical situations do not constitute the practice of a profession or specialty which would make his testimony relevant.  Therefore, the Court holds

---

[44] Jan. 15 Shull Aff. ¶ 19-20.

[45] *Eckler v. Allen*, 231 S.W.3d 379, 385 (Tenn. Ct. App. 2006).

[46] *Shipley v. Williams*, 350 S.W.3d 527, 552-53 (Tenn. 2011).

[47] *See* Pl.'s Obj. to R&R at 4-5, 6, 7, 11, 13, 14, 15, 16, 17.

that Dr. Shull is not competent to testify as to the appropriate standard of care for post-surgical care.

Mrs. Bock also cites to several cases where Tennessee courts found a proffered witness practicing a different specialty than that of the defendant competent. The Court begins by stating it does not base its holding on the mere fact Dr. Shull practiced a different specialty than those at issue here from 2002-2003. Rather, the Court holds that Dr. Shull's practice insufficiently connected to the issues before the court to make his testimony relevant for the purposes of § 29-26-115(b). Even so, the Court finds each case Mrs. Bock cites distinguishable from the present matter. In *Searle v. Bryant*, the Tennessee Supreme Court held an infectious disease specialist and clinical microbiologist competent to testify as to the care of a surgical wound infection.[48] However, care and treatment of an infection logically and directly relates to the practice of clinical microbiology and treatment of infectious diseases, making the testimony of a witness who practices in those fields relevant. In *Stokes v. Leung*, the Tennessee Court of Appeals of Tennessee found a psychiatrist called as an expert witness against a cardiologist and internal medicine specialist doctor competent.[49] The issue in *Stokes* was the appropriate standard of care for a patient *with psychiatric problems*, and the issue before the court went directly to how the defendants dealt with the patient's psychiatric problems[50]—clearly something to which the practice of psychiatry would be relevant. In *Coyle v. Prieto*, the Tennessee Court of Appeals held that an internist was competent to testify as to the applicable standard of care of a

---

[48] *Searle v. Bryant,* 713 S.W.2d 62, 65 (Tenn. 1986).

[49] *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn. Ct. App. 1982).

[50] *Id.* at 708.

pathologist examining a patient biopsy for cancer.[51] In *Coyle*, the proffered witness testified that his practice involved the workup and diagnosis of cancerous lung biopsies, showing that he practiced a specialty within the year prior to the alleged misconduct that would make his testimony relevant.[52] Finally, in *Bravo v. Sumner Reg. Health Sys.*, the Tennessee Court of Appeals held a gynecologist competent to testify as to the appropriate standard of care in obstetrics.[53] In a "very close issue," the Court of Appeals gave weight to several factors, including that the gynecologist maintained board certification in obstetrics and that he taught obstetrics at Emory University.[54] In contrast to the foregoing cases, Dr. Shull's practice of general medicine does not appear to be directly relevant to the issues before the Court in this case. He does not regularly see surgical patients. He does not regularly recommend the type of surgery performed in this case. He does not regularly care for post-operative patients in a hospital setting. Dr. Shull neither maintains board certification in surgery, stating in his deposition that he was unable to learn current surgical techniques,[55] nor does he instruct on surgical techniques.

    Because the Court finds that under Tennessee law Dr. Shull is not competent to testify as to the standard of care due to Mr. Bock by UTMG in the decision to use chemo-embolization or radiofrequency ablation, the standard of care due to Mr. Bock by UTMG in the execution of these techniques, or UTMG's provision of post-operative care, the Court finds it unnecessary to

---

[51] *Coyle v. Prieto*, 822 S.W.2d 596, 600 (Tenn. Ct. App. 1991).

[52] *Id.* at 598.

[53] *Bravo v. Sumner Reg. Health Sys.,* 148 S.W.3d 357, 367 (Tenn. Ct. App. 2003).

[54] *Id.*

[55] Shull Dep. 24:6-25.

perform the second step of analysis under *Legg*.  As a result of Dr. Shull's disqualification, the Court, finding that Mrs. Bock is unable to support an element of her prima facie case on which she bears the burden of proof, holds that Defendant's Motion for Summary Judgment is well-taken, and **GRANTS** summary judgment in Defendant's favor.

### CONCLUSION

Because Dr. Shull did not practice a profession or specialty within the year preceding the alleged wrongful acts leading to Mr. Bock's death that would make Dr. Shull's testimony relevant, the Court holds that he is not qualified as an expert witness under Tenn. Code Ann. § 29-26-15(b).  Since Dr. Shull is the sole witness adduced by Mrs. Bock to prove an essential element of her claim on which she bears the burden of proof under Tenn. Code Ann. § 29-16-15(a), the Court finds that summary judgment is appropriate, and hereby **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              UNITED STATES DISTRICT JUDGE

                                              Date:  February 12, 2013.